## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| THE REINALT-THOMAS CORPORATION d/b/a DISCOUNT TIRE,<br><br>                    Plaintiff,<br><br>     v.<br><br>MAVIS TIRE SUPPLY LLC,<br><br>                    Defendant. | Civil Action No. 1:18-cv-05877-TCB |

**PLAINTIFF'S SUPPLEMENTAL BRIEF AND EVIDENCE IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION PER THE COURT'S SCHEDULING ORDER (DKT. 22)**

# **TABLE OF CONTENTS**

|      |                                                                                                                                                                       | Page |
|------|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------|------|
| I.   | Defendant's Conduct Continues to Cause Rampant Actual Confusion                                                                                                       | 1    |
| II.  | Tire Consumers' Internet Use Increases the Likelihood of Confusion                                                                                                    | 6    |
| III. | Plaintiff's DISCOUNT TIRE Mark Is Well-Known, A Fact About Which Defendant Was Aware                                                                                  | 8    |
| IV.  | Defendant Limited its Use of Mavis Discount Tire to the Northeast Until its Recent Southeast Expansion Despite Knowing of Plaintiff's Rights                          | 9    |
| V.   | The Additional Evidence Further Demonstrates Defendant's Continued Expansion and Infringement Despite this Litigation                                                 | 9    |

I.  **Defendant's Conduct Continues to Cause Rampant Actual Confusion**

Plaintiff submits additional actual confusion evidence, including: (1) 30 incidents collected by Defendant; (2) 32 additional declarations collected by Plaintiff; (3) Defendant's business records that corroborate actual confusion declarations; and (4) Declarants' testimony.

**Defendant Detected More than 30 Examples of Confusion.** Defendant conducted an investigation and prepared a report as its official corporate response to Plaintiff's Rule 30(b)(6) topic on actual confusion, identifying more than 30 instances of customer confusion and mistake, although it includes no details for follow-up investigations. Sorbaro Dep. Tr. ("Ex. 1")[1] at 28:5–12, 37:17–51:16, 477:20–478:1, 480:14–481:8; Dep. Ex. App. ("App. 1") at Exs. 18 (Topic 15), 47. The report includes 9 examples of customers who made an appointment with Plaintiff but showed up at Defendant's store. For example, "[v]isiting man said he had appointment. When not found in the system, asked if RTC [Reinalt-Thomas Corp.]. Left when told no." App. 1, Ex. 47 (first entry).[2] There are also 11 accounts

---

[1] Mr. David Sorbaro was deposed in his personal capacity and as Defendant's sole Rule 30(b)(6) designee over two days. His two deposition transcripts, with continuous pagination, are filed as a single exhibit, Ex. 1.

[2] Though Defendant's confusion report references "RTC," it must actually be referring to "Discount Tire" because Plaintiff does not use "RTC" or "Reinalt-Thomas" as a customer-facing brand.

of customers (some multiple) who asked if Defendant was related to Plaintiff. For example, "[w]oman relayed that she had been told Mavis [*sic*] owned by RTC and asked for verification." *Id.* (eighth entry).

It is astonishing that Defendant detected more than 30 instances of confusion with a one-time snapshot investigation in February 2019. Who knows what it would have detected if it had paid ongoing attention, but clearly it did not. Before the litigation, Defendant made no effort to detect confusion. Ex. 1 at 59:10–25. Nothing changed after the Complaint, according to Brian Sisson, Defendant's Regional VP for Georgia and Florida. Plaintiff deposed Mr. Sisson because Defendant had identified him as a person who could testify about "Mavis's knowledge regarding any confusion caused by use of the Mavis Discount Tire name and marks." Ex. 2 at Attachment A. In addition, Mr. Sorbaro had testified that Jennifer Papas, the author of Defendant's confusion report, spoke to Mr. Sisson while preparing the report. Ex. 1 at 37:17–38:14. Given this build-up, it is incredible that Mr. Sisson testified that: (1) he has done nothing to investigate confusion in Georgia; (2) Defendant has instructed no employees, including him, to be on the alert for instances of confusion; (3) Defendant has no process in place to allow employees to report confusion; (4) Defendant does not train its employees on how to respond if customers exhibit confusion about trademarks; (5) he is not responsible for receiving reports of

confusion and is not aware of anyone who is; and (6) he does not know of any systems that Defendant has in place to record the names of confused customers. (Sisson Dep. Tr. ("Ex. 3") at 63:14–65:1, 66:21–67:3, 73:10–74:8, 78:9–20.) Mr. Sisson conceded that a Regional Director once described an actual confusion incident, but he made no effort to record the customer's name or search Defendant's records for it: "He didn't tell me the specifics nor did I ask him." *Id.* at 71:3–73:13. The inference is inescapable that with consistent vigilance, Defendant would have detected many more instances of confusion. Instead, Defendant ignored, if not hid, from the facts.

**<u>Additional Actual Confusion Evidence Offered by Plaintiff.</u>** Plaintiff has itself detected 32 additional actual confusion instances (App. 2). Here are but a few highlights:

- A customer went to Mavis Discount Tire for her Discount Tire appointment, and when told that she was at Mavis Discount Tire and not Discount Tire, she asked, "isn't that the same thing?" App. 2, at Tab 1.

- A customer made an appointment with Mavis Discount Tire thinking it was Discount Tire "owned or run by someone named Mavis." *Id.* at Tab 2.

- A customer called Mavis Discount Tire to inquire about tire prices thinking that he was calling Discount Tire. *Id.* at Tab 4.

- A customer came to Discount Tire for tire installation but presented the order confirmation she had received from Mavis Discount Tire. *Id.* at Tab 12.

- A customer asked if Mavis Discount Tire was the parent company of Discount Tire. *Id.* at Tab 13.

- A customer stood in line at Mavis Discount Tire for her Discount Tire appointment under the impression that she was at Discount Tire. *Id.* at Tab 18.

- At one or more stores in Jacksonville, Defendant answers its phone, "Thank you for choosing *Discount Tire*," causing rank confusion there. *Id.* at Tab 24.

- A job applicant who was hired by Mavis Discount Tire came to Discount Tire for paperwork assuming that both were the same company. *Id.* at Tab 28.

**Defendant's Records Corroborate Confusion Declarations.** In support of its preliminary injunction motion, Plaintiff submitted several declarations of its employees attesting to conversations with customers who exhibited trademark confusion. Dkt. 6.[3] Several of these employees explained that the customer alluded to a prior interaction with Defendant. In anticipation of the inevitable contention that these employee declarations were biased, Plaintiff obtained Defendant's records to corroborate the confused customer's prior business with Defendant:

| **Plaintiff's Employee's Prior Declaration Assertions (*See* Dkt. 6):** | **Defendant's Corroborating Business Record[4] (*See* App. 3):** |
|---|---|
| A customer who received an alignment from Defendant called Plaintiff to complain about it. Dkt. 6, Tab 30. | Defendant's records shows that this customer received an alignment from Defendant. App. 3, Tab 1. |
| A customer submitted a damage claim to Defendant over battery service but called | Defendant's record confirms the battery-replacement related damage |

---

[3] Dkt. 6 is the unredacted (sealed) version of the Appendix at Dkt. 5-31.

[4] All of these records are admissible evidence falling under the business records exception to hearsay. Ex. 3 at 79:24-98:14; Fed. R. Evid. 803(6).

4

| | |
|---|---|
| Plaintiff to follow-up. *Id.* at Tab 33. | claim by this customer. *Id.* at Tab 2. |
| A customer had visited Defendant's store a number of times but stopped at Plaintiff's store because it was closer and she thought it was the same company. *Id.* at Tab 8 | Defendant's records show that this customer had done business with Defendant on many occasions. *Id.* at Tab 3. |
| A customer called Plaintiff and asked if "we were Mavis Discount Tire." *Id.* at Tab 36. | Defendant's records confirm that this was its prior customer. *Id.* at Tab 4. |
| A customer called Plaintiff twice searching for Defendant to have an alternator changed. *Id.* at Tab 28. | Defendant's record shows that this customer had Defendant perform the service *Id.* at Tab 5. |
| A customer said he had bought a trailer tire from Defendant and asked if Plaintiff had bought Kauffman. *Id.* at Tab 17. | Defendant's record shows the purchase. *Id.* at Tab 6. |
| A customer called Plaintiff to make an appointment for an alignment and confirmed she was looking for Defendant. *Id.* at Tab 2. | Defendant's records show this customer then had the service performed at one of Defendant's stores. *Id.* at Tab 7. |
| A customer called Plaintiff with a complaint that her recently purchased tires were riding badly. *Id.* at Tab 51. | Defendant's record shows that she purchased the tires from Defendant and that the tires required rebalancing. *Id.* at Tab 8; *see also* Ex. 1 at 481:9–492:1, 439:3–7. |

**Actual Confusion Declarants Testified About Their Confusion.** Some of the actual confusion declarants gave deposition testimony that detailed how and why the confusion happened. For example, Ms. Jones reaffirmed her declaration (Dkt. 6, Tab 21) that she mistakenly made an appointment with Mavis Discount Tire instead of with Discount Tire because she "thought, you know, they are all the same. Maybe it is just a different branch." Jones Dep. Tr. ("Ex. 4"), 14:13–23; 45:3–47:4. Why?

5

> Because, in the name, I thought -- you know how like some companies have, like, different branches of things? Like, I thought Mavis Discount was -- I thought it was all the same basically. I thought Discount Tire was, like, the same as Mavis Discount. It is just a different name; so I didn't think to go into detail of it. Again, it was just a mistake.

Ex. 4, 23:3–14.

Ms. Johnson reaffirmed her declaration. (Dkt. 6, Tab 19; Johnson Dep. Tr. ("Ex. 5"), 49:9–13.) Although she had a "confirmation from them" and "made an appointment with Mavis Discount Tire," her "intention wasn't to go to a Mavis Discount Tire." *Id.* at 60:9–20. Mr. Blythers also affirmed his declaration (Dtk. 6, Tab 27). Blythers Dep. Tr. ("Ex. 6"), 24:16–25, 28:12–19. After seeing a Mavis Discount Tire ad, he asked a Discount Tire manager "if they were affiliated because I noticed the lettering was very similar" and that he was "not sure about there being an affiliation" because "[t]he style of letting [*sic*] is very similar. And it's the same name, one's just – one word difference." Ex. 6, 26:6–11, 26:15–22, 28:25–29:7.

## II.   Tire Consumers' Internet Use Increases the Likelihood of Confusion

The actual confusion evidence shows that tire consumers begin their shopping online—and get confused—long before they visit a brick and mortar store. The expert report of Donna Hoffman, Ph.D., ("Ex. 7") and the deposition testimony of Pat Schulte, Defendant's VP of Marketing ("Ex. 8") underscore this point.

As Dr. Hoffman explains, a "high number" of tire consumers use the Internet throughout their purchase "journey." Ex. 7, ¶¶21–41. Most tire purchasers begin their shopping online, using text-entry search engines leading to engagement with brands and advertisements in standard typeface, followed by logos within online ads or websites. *Id.*, ¶¶35–37. Online search and in-store behavior are increasingly "reliant on each other," with more than 80% of tire consumers having used the Internet before purchasing at a store. *Id.*, ¶¶38–39.

Mr. Schulte seems to agree with Dr. Hoffman. He testified that Defendant uses its "paid search," website, and other online strategies to "engage the brand" and to "take customers from the internet and convert them to coming into the stores." Ex. 8, 176:9–23, 181:1–17, 184:3–186:20, 208:1–215:20, 232:7–19; App. 1, Exs. 65, 68. Schulte also testified that Defendant has been increasing its digital advertising in the Southeast, that its "paid search" ads use only the Mavis Discount Tire *word* mark, and that an Internet search for Plaintiff in Atlanta by entering "discount tire" can result in the display of a Mavis Discount Tire ad. Ex. 8, 97:42–98:21, 201:3–22, 214:15–215:11. It is no wonder that many of the actual confusion declaration narratives begin with a word search for "Discount Tire" that results in confusion with "Mavis Discount Tire" leading to mistaken appointments.

7

### III. Plaintiff's DISCOUNT TIRE Mark Is Well-Known, A Fact About Which Defendant Was Aware

To update the survey 2013 survey results submitted to the USPTO (Dkt. 5-44), Plaintiff submits the expert report of Matthew Ezell. Ex. 9, ¶¶1-28. Mr. Ezell conducted a universally-adopted "Teflon"-type survey of consumers in Atlanta, Jacksonville, and Orlando, finding between 76–84% of consumers recognize DISCOUNT TIRE as a *brand* name for retail tire services—the magnitude of which, Mr. Ezell concludes, shows that the mark is "strong and famous" in those areas. *Id.* at ¶¶3-19, Ex. B. He found these results were consistent with the survey findings of the late Dr. Gerald Ford who, in 2013, conducted a similar survey in 37 U.S. markets that Plaintiff submitted to the USPTO in support of its Lanham Act 2(f) Registration No. 4,639,389 for DISCOUNT TIRE. (*Id.* at ¶¶2, 5, 19, Ex. A; Dkt. 5-43.)

Defendant itself was aware of Plaintiff's brand before entering the Southeast. For example, Defendant knew of Plaintiff's consistently high industry rankings at least since the 1980s, became familiar with Plaintiff over the years, recently faced Plaintiff's objections to its federal trademark applications based on Plaintiff's own three issued federal registrations, and witnessed Plaintiff's stores first-hand while touring Georgia—all before Defendant decided to go forth with its rebranding plans. Ex. 1 at 94:19–96:13, 98:2–99:13, 142:19–143:1, 191:20–192:2, 257:2–259:1, 437:17–438:17, 46:19–464:9; App. 1, Exs. 6, 7, 16, 35, 37–41, 44.

8

## IV. Defendant Limited its Use of Mavis Discount Tire to the Northeast Until its Recent Southeast Expansion Despite Knowing of Plaintiff's Rights

Discovery confirms that Defendant limited its use of the Mavis Discount Tire marks exclusively to the Northeast until its recent rebranding efforts began for Georgia and Florida in 2018. Ex. 1 at 62:2-15, 113:1–23, 140:1–17, 140:18–141:25, 178:19–179:3, 412:10–18; App. 1, Exs. 11–12 at Response No. 2. As of June 26, 2013, the effective date of Plaintiff's Registration No. 4,639,389, Defendant had stores in only New York, Connecticut, and Massachusetts. Ex. 1, 140:18–141:25. To the extent Defendant claims it had any measurable presence in the Southeast through its website, that is belied by the testimony of Defendant's own VP of Marketing and its *de minimis* online sales into that region throughout the years. Ex. 8, 109:11–110:20, 143:12–23; Ex. 10 (Def.'s online sales). Mr. Sisson, who has worked in the tire business in Georgia since 1995, testified that he had never heard of Defendant prior to December 2017 when he learned that Defendant had acquired Kauffmann Tire, his employer at that time. Ex. 3, 13:2–15:15, 22:9–31:20. Consequently, Plaintiff had acquired rights in Georgia and Florida long before Defendant's 2018 incursion into these markets.

## V. The Additional Evidence Further Demonstrates Defendant's Continued Expansion and Infringement Despite this Litigation

Despite originally having plans to keep the Kauffman brand in place and

9

"revisit" that approach later, Defendant proceeded to rebrand as Mavis Discount Tire. Ex. 1 at 26:8–20, 257:24–259:1, 464:10–471:7; App. 1, Exs. 35, 45 at pp. 5, 7, 10; Ex. 8, 112:7–114:10, 121:5–24. And Defendant continues to do so, with Mr. Sorbaro declaring that Defendant's "standard operation" is to rebrand *all* of its new stores to Mavis Discount Tire "entirely or nearly as entirely as it can under the circumstances," with "no freeze or pause" in the Southeast and beyond—regardless of this lawsuit. Ex. 1, 177:15–178:18, 237:21–238:5, 262:17–263:25 ("[I]t's more a question of when rather than if."), 478:5–11, 484:3–9.

The additional record further proves Defendant's infringement. Defendant has essentially admitted the high degree of similarity between the parties' marks, making a supposed "courtesy" change to straighten its tumbled "Discount" lettering as a result of this litigation. Ex. 1, 212:10–17, 242:14–243:9, 432:24–433:9; Ex. 8, 84:1–87:15. Plus, Defendant rarely uses only the plain text version of its mark, instead consistently mixing the plain and tumbled versions. (*E.g.*, Ex. 8, 88:21–90:18, 104:21–106:3, 231:10–235:12; App. 1, Exs. 8 (at 2345), 21. Thus, Defendant cannot avoid the consequences of its infringing tumbled letter design by pointing to the plain letter version.

The supplemental record further establishes: (1) that Defendant has begun to advertise extensively (with a substantial budget going forward) in Georgia and

Florida, using the Mavis Discount Tire marks in the same media channels as Plaintiff, including print, television, radio (with a significant temporal separation between the ad's "Mavis" and "Discount Tire" references), professional sports (e.g., prominent displays at Braves, Falcons, and Tampa Bay Buccaneer games), nearly identical Synchrony private labeled credit cards, Google "paid searches," and social media (Ex. 1, 179:7–181:1, 208:12–214:7, 231:10–235:12, 244:1–21; Ex. 8, 88:21–90:18, 97:42–100:23, 104:3–20, 106:20–107:25, 129;14–136:15, 144:19–145:13; App. 1, Exs. 8 (at 2345), 17, 21, 51; Exs. 11–12); (2) the proximity of the parties' stores, including some across the street from each other (Ex. 1, 223:23–229:18, 235:18–23; Ex. 8, 65:9–67:8; App. 1, Ex. 19); and (3) that Defendant admits Plaintiff is its major competitor and was monitoring Plaintiff's prices in the Southeast well before rebranding there (Ex. 1, 194:14–197:13, 200:17–24; Ex. 8, 93:17–94:21, 165:5–166:24; App. 1, Exs. 15–16).

|  |  |
|---|---|
| April 12, 2019 | Respectfully submitted, |
|  | */s/ Lawrence K. Nodine* |
|  | Lawrence K. Nodine |
|  | Georgia Bar No. 545250 |
|  | nodinel@ballardspahr.com |
|  | Chittam U. Thakore |
|  | Georgia Bar No. 890965 |
|  | thakorec@ballardspahr.com |
|  | BALLARD SPAHR LLP |
|  | 999 Peachtree St. NE, Suite 1000 |
|  | Atlanta, GA 30309 |

11

Telephone: 678.420.9300
Fax: 678.420.9301

R. Charles Henn
Georgia Bar No. 347098
chenn@kilpatricktownsend.com
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Telephone: 404.815.6500
Fax: 404.795.8970

Brian W. LaCorte (*pro hac vice*)
lacorteb@ballardspahr.com
Jonathon A. Talcott (*pro hac vice*)
talcottj@ballardspahr.com
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400
Fax: 602.798.5595

*Counsel for Plaintiff*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to LR 7.1D, I hereby certify that the foregoing Supplemental Brief And Evidence in Suppor of Plaintiff's Motion for Preliminary Injunction complies with the font and point selection approved by the Court in LR 5.1B. The foregoing was prepared on a computer using the 14-point Times New Roman font.

/s/ Lawrence K. Nodine
Lawrence K. Nodine (Georgia Bar No. 545250)
nodinel@ballardsphar.com
BALLARD SPAHR LLP

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2019, a true and correct copy of PLAINTIFF'S SUPPLEMENTAL BRIEF AND EVIDENCE IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION was served via email to all attorneys on record in this case.

/s/ Lawrence K. Nodine
Lawrence K. Nodine (Georgia Bar No. 545250)
nodinel@ballardsphar.com
BALLARD SPAHR LLP

*Counsel for Plaintiff*